UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:07-CV-208-F

| | |
|---|---|
| WAUSAU UNDERWRITERS INSURANCE COMPANY and EMPLOYERS INSURANCE COMPANY OF WAUSAU F/K/A/ EMPLOYERS INSURANCE OF WAUSAU (A MUTUAL COMPANY), | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )     **ORDER** |
| v. | )<br>) |
| DM FARMS OF ROSE HILL, LLC, MURPHY FAMILY VENTURES, LLC, PSM ASSOCIATES, LLC, MURPHY FARMS, LLC, MURPHY FARMS, INC. and MURPHY-BROWN, LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

This matter is before the court on the Motion [DE-11] by Defendants DM Farms of Rose Hill, LLC, Murphy Family Ventures, LLC, PSM Associates, LLC, Murphy Farms, LLC, Murphy Farms, Inc., and Murphy-Brown, LLC (collectively "Defendants") to dismiss, or in the alternative, to stay a declaratory judgment action filed by Plaintiffs Wausau Underwriters Insurance Company and Employers Insurance Company of Wausau (collectively "Insurers"). Insurers responded to the motion [DE-19] and Defendants replied. [DE-20]. This matter is ripe for disposition.

## I. PROCEDURAL HISTORY

Insurers filed this diversity action on December 31, 2007, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, seeking a judgment declaring that certain insurance policies issued to Defendants ("Policies") provide no coverage for the tort claims filed against Defendants in a lawsuit pending in Missouri state court captioned *Cooper et al. v. DM Farms of Rose Hill, LLC, et al.* ("the Missouri action"). On February 19, 2008, Defendants filed a Motion [DE-11] to dismiss, or in the alternative, to stay these proceedings[1] in favor of a comprehensive insurance coverage action ("Third-Party Petition") filed by Defendants against Insurers on February 15, 2008 in the Missouri action. On March 13, 2008, Insurers filed a Response [DE-19] in opposition to Defendants' alternative motions and on March 31, 2008, Defendants filed a Reply [DE-20].

## II. STATEMENT OF FACTS

Defendants own, manage and/or operate commercial hog facilities in Missouri. Plaintiffs in the Missouri action ("the *Cooper* plaintiffs") lease or own property in proximity to Defendants' facilities. On May 30, 2007, the *Cooper* plaintiffs filed suit in Missouri, seeking compensatory and punitive damages and other relief, and alleging that the acts and omissions of

---

[1] Defendants have moved the court to dismiss Insurers' declaratory judgment action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (on the grounds that this court lacks jurisdiction), Rule 12(b)(6) (for failure to state a claim) and Rule 12(b)(7) (failure to join a necessary party). In ruling on a motion to dismiss under Rules 12(b)(6) or 12(b)(7), a court must accept as true the allegations contained in the complaint. *Maljack Prods. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995). In cases involving attacks on the court's jurisdiction under Rule 12(b)(1), the parties may produce affidavits and other materials to support their positions on subject matter jurisdiction and the court may also consider matters of public record. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

2

Defendants in the operation and maintenance of their hog facilities impaired the use and quiet enjoyment of their property. Amended Compl., Ex. A [DE-9-2] (the "*Cooper* Petition").

On July 10, 2007, Defendants notified Insurers of the lawsuit brought by the *Cooper* plaintiffs and Insurers' obligation to defend and indemnify Defendants under the Policies. Mot. to Dismiss, Decl. of Jean Paul Bradshaw [DE-11-2] (hereinafter "Bradshaw Decl."), Ex. B. In a letter dated August 23, 2007, Insurers notified Defendants of their decision to participate in the defense of the insureds under the Policies subject to a reservation of rights, including the right to contest whether the alleged torts were covered by the Policies. Bradshaw Decl. [DE-11-2], Ex. C. Insurers also requested (1) the names of all other insurers whose coverage is potentially implicated by the Missouri action and (2) corporate documentation needed to determine whether certain entities and individuals qualified as additional insureds under the Policies. In response, Defendants notified Insurers on October 31, 2007 of the following: (1) their unwillingness to accept Insurers' reservation of rights and Insurers' right to seek reimbursement of defense costs and other sums paid to Defendants; (2) their belief that responses from other insurers have no bearing on the evaluation of Insurers' claims under the Policies; and (3) that they were in the process of gathering the requested corporate documents. Bradshaw Decl. [DE-11-2], Ex. D. On November 15, 2007, Insurers reiterated their reservation of rights and again requested the names of any other insurers whose coverage is potentially implicated by the Missouri action. Bradshaw Decl. [DE-11-2], Ex. E.

Relying on diversity jurisdiction, Insurers filed a declaratory judgment action in this court on December 31, 2007 [DE-1], and an Amended Complaint [DE-9] on January 30, 2008, asking the court to declare that Insurers have no duty to defend or indemnify Defendants under the terms of the Policies. In particular, Insurers contend they have no obligation to defend or

indemnify (1) DM Farms of Rose Hill, LLC, Murphy Family Ventures, LLC and PSM Associates, LLC because either the allegations in the Missouri action are not within the coverage or are excluded from coverage of the Policies or; (2) Murphy Farms, LLC, Murphy Farms, Inc. and/or Murphy-Brown, LLC because these parties are not named insureds. Am. Compl. [DE-9] at pp. 21-22.

On February 15, 2008, the insureds in the Missouri action, which include the Defendants in the instant case and two other individual insureds not named in this action, filed a Third-Party Petition against Insurers in the Missouri action. Bradshaw Decl. [DE-11-1], Ex. F (the Third-Party Petition). The Third-Party Petition seeks declaratory relief regarding whether the Policies provide coverage for the Cooper plaintiffs' claims, and also seeks money damages from Insurers for breach of contract and vexatious refusal to pay, a statutory remedy under Missouri law. Shortly after filing the Third-Party Petition in the Missouri action, Defendants filed the instant Motion to Dismiss.

### III. STANDARD OF REVIEW

This action was filed under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* (the "DJA"). The DJA vests a district court with discretion in determining whether to proceed with a declaratory judgment action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-90 (1995) ("[The DJA] created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."). When another suit is pending in a state court involving the same parties and providing the same opportunity for relief, a district court has "wide discretion" in deciding whether to stay or dismiss a declaratory judgment action. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (citing *Wilton*, 515 U.S. at 288).

4

Generally, a district court should exercise its discretion to proceed with a declaratory judgment action when the judgment sought will (1) " 'serve a useful purpose in clarifying and settling the legal relations in issue' " and (2) " 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Centennial Life Ins. Co.*, 88 F.3d at 256 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). However, if a federal court is confronted with an insurer's request for a "declaratory judgment on coverages issues while the underlying litigation against its insured is pending in the state courts," *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) (citing *Mitcheson v. Harris*, 955 F.2d 235, 237-41 (4th Cir. 1992)), the district court's decision must also be guided by considerations of federalism, efficiency and comity. *Id.* at 376-77. The evaluation of these additional considerations is based on a four-factor test:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (iv) whether the declaratory judgment action is being used merely as a device for procedural fencing - that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id.* at 377 (quotations and citations omitted). Additionally, the Supreme Court has cautioned that "at least where another suit involving the same parties and presenting opportunities for the ventilation of the same state law issues is pending in state court, a district court may be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)).

5

## IV. ANALYSIS

**A.   Applying *Quarles* Factors**

At issue is whether the terms of the Policies obligate Insurers to provide Defendants a defense in the Missouri action and to indemnify Defendants for damages that may arise from that action. This declaratory judgment action before this court would serve the useful purpose of settling the dispute regarding Insurers' alleged obligations and afford relief from uncertainty surrounding the existence of those obligations. In particular, resolving Insurers' duty to defend obligations prior to adjudicating Defendants' liability may allow Insurers to avoid unnecessary defense costs. In addition, resolving indemnity issues in advance of the adjudication of Defendants' liability provides guidance and structure to potential settlement negotiations in the Missouri action. *See Nautilus*, 15 F.3d at 376 ("To delay [resolution of this controversy until the underlying suit against the insured proceeds to judgment] . . . would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs.") (citation and quotation omitted).

Thus, the court finds that the requirements of the initial inquiry under *Quarles* are satisfied. However, the court is mindful of the underlying state proceeding and must also consider the *Nautilus* factors outlined above. *See United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) ("The existence of this state action therefore animates the issues of federalism and comity and counsels careful examination of the factors identified in *Nautilus*.")

**B.   Applying *Nautilus* Factors**

1.   *State interest*

The first *Nautilus* factor to be considered is the "strength of the state's interest in having the issues raised in the federal declaratory action decided in state court." *Nautilus*, 15 F.3d at

6

377. Such consideration raises two issues: the state's interest in deciding issues of state law and an out-of-state party's interest in a federal forum. *See Mitcheson*, 955 F.2d at 237. "Reconciling these competing interests, the Fourth Circuit has consistently followed the rule that the state's interest, while important, is diminished if the state-law issues are not novel, unsettled, difficult, complex, or otherwise problematic." *First Fin. Ins. Co. v. Crossroads Lounge*, 140 F. Supp. 2d 686, 695 (S.D.W. Va. 2001) (citing *Nautilus*, 15 F.3d at 378 and *United Capitol Ins. Co.*, 155 F.3d at 494).

Defendants aver that Missouri has a significant interest in the issue raised in this action for the following reasons: (1) Defendants' hog farms are located in Missouri; (2) the existence of several pending lawsuits in Missouri against other hog farms located in the state; and (3) Insurers' coverage claims raise an issue controlled by Missouri tort law. Defs.' Mem. of Law in Supp. of Mot. to Dismiss or Stay [DE-12] at pp. 10-11 (hereinafter "Defs.' Mem."). Insurers, however, contend that North Carolina law governs the coverage dispute between the parties. The court need not resolve the parties' choice-of-law arguments, however, because even if Missouri law controls the coverage dispute, the court perceives that the "relevant state law is not problematic or difficult to apply." *Centennial Life Ins. Co.*, 88 F.3d at 258. Thus, Missouri's interest in having these issues decided in state court are weakened. *Centennial Life Ins. Co.*, 88 F.3d at 258. Moreover, neither of the parties indicate that the interpretation of the Policies is likely to turn on a novel question of law or break new ground. Consequently, the court finds application of the first *Nautilus* factor militates in favor of retaining federal jurisdiction.

2. *Efficiency*

Next, the court considers whether the issues presented in the declaratory judgment action can be resolved more efficiently in the underlying state tort action. In addressing this factor, a

7

district court should conduct a "careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" *Nautilus*, 15 F.3d at 378-79 (citing *Brillhart*, 316 U.S. at 495) (alteration in original).

Here, the coverage issues raised in this action can be more effectively resolved in the pending Missouri action. In particular, the Missouri action includes two additional defendants and issues not present in the federal action, namely, claims for breach of contract and vexatious refusal to pay. *See Centennial Life Ins. Co.*, 88 F.3d at 257 (describing the additional defendants and issues raised in the pending state action as a "particularly salient" factor). Moreover, "significant discovery has already been undertaken" in the state action. *Id.* at 258. Efficiency dictates that resolution of issues stemming from one controversy should be resolved by one court. The Missouri court is capable of entertaining a declaratory judgment action that will resolve the same issues as raised before this court. Indeed, the third-party petition is now before the Missouri court. Thus, this court finds that the efficiency factor weighs heavily in favor of declining jurisdiction.

  3. *Overlapping Issues of Fact or Law that Might Create Entanglement*

Unnecessary entanglement arises when there are overlapping issues of fact or law in the federal and state court actions. *See Mitcheson*, 955 F.2d at 237-40. In this case, the duty to defend question will require the court to resolve some factual questions at issue in the state court proceedings. For example, Insurers allege the *Cooper* plaintiffs in the Missouri action fail to allege bodily injury or actual physical damage to or loss of use of any property; therefore, "[t]he allegations in the [Missouri action] are not within the definition of property damage set forth in

8

Case 7:07-cv-00208-F   Document 25   Filed 05/21/08   Page 8 of 12

the Policies and are thereby not within the coverage of the Policies." Am. Compl. [DE-9] ¶ 49 and at p. 21; *see Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) ("[T]he insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings."). Defendants counter that the *Cooper* plaintiffs have in fact sought all recoverable damages. Def.'s Mem. [DE-12] at p. 11 (citing the *Cooper* Petition at p. 11). Discovery in the Missouri action appears to support this position as Interrogatories filed in the Missouri action indicate the *Cooper* plaintiffs are seeking recovery for property damage, loss of use of property and bodily injury.[2] *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377 ("Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a . . . complaint appear to be outside coverage, or within a policy exception to coverage.") (citation omitted).

Another example of the existence of overlapping issues concerns the *Cooper* plaintiffs' alleged damages caused by odors. Insurers contend the odors fall within the definition of pollutant as set forth in the Policies; therefore, "[u]nder the Total Pollution Exclusion and other pollution exclusions in the Policies, no coverage is provided for claims arising from or related to contamination by pollutants." Amended Compl. [DE-9] at p. 21. Defendants claim the odors do not constitute pollutants; thus, the pollution exclusions in the Policies are inapplicable. Defs.' Reply [DE-20] at p. 7. The resolution of whether insurance coverage exists depends in part on whether the Missouri court finds the *Cooper* plaintiffs suffered the alleged damages and injuries covered under the Policies. *Id.* at 12.

---

[2] See generally the Answers and Objections to Defendants' First Set of Interrogatories by various *Cooper* plaintiffs. Defs.' Reply [DE-20-3 and DE-20-4].

Unnecessary entanglement is almost certain if this court retains jurisdiction to hear the indemnity and defense claims, which are substantially similar to those already pending in state court. In particular, claim or issue preclusion could arise if this court adjudicates these claims. "Such . . . preclusion will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution." *Mitcheson*, 955 F.2d at 239 (citing *Phoenix Ins. Co. v. Harby Marina, Inc.*, 294 F. Supp. 663, 664 (N.D. Fla. 1969)). As a result, the court finds that the entanglement factor also weighs heavily in favor of declining jurisdiction.

4. *Procedural Fencing*

Finally, the court must consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'--that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable.' " *Nautilus*, 15 F.3d at 377 (internal citation omitted). A federal action of this kind may be filed "in an entirely proper effort to obtain prompt resolution of a dispute over [an insurer's] obligation." *Nautilus*, 15 F.3d at 380. However, the filing of a federal declaratory action when an underlying state action is already pending indicates "that [it] *may have been used* as a form of procedural fencing." *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 968 (4th Cir. 1994) (emphasis added). As the *Continental* court observed,

> Although [insurer] has argued that it filed a federal action prior to the filing of any similar action in state court, and technically that is true, still [insurer] had been notified that [defendants] intended to rely on the [insurance] coverage provided by [insurer] in their [underlying state court] proceedings . . . . While the issues regarding insurance coverage *per se* were not before the state court in the proceedings involving [defendants] when [insurer] filed an action in the district court, [insurer] already knew that the coverage issues were bound to arise during the course of those proceedings. [Insurer] has attempted to have the coverage

issue determined by the federal court before the issue arose in the context of the state proceedings.

*Id.* (internal footnote omitted).

Despite Defendant's contention to the contrary, the court is not convinced that this action is being used as a device for procedural fencing. Insurers brought this case to determine whether it has a duty to indemnify and defend Defendants in the Missouri action. An action filed by an insurer to obtain the prompt resolution of a dispute over the obligations to defend and indemnify its insured arising from a separate and independent tort action filed against it in state court is appropriate for early resolution in a declaratory action. *See Nautilus Ins. Co.*, 15 F.3d at 380. As explained by Insurers, it provided Defendants with timely notice that it fully reserved its rights, including its right to seek declaratory action. Response [DE-19] at p. 13; *cf. State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 428 (M.D.N.C. 1988) (describing the filing of a declaratory judgment action by insurer three days prior to insured's receipt as procedural fencing). In any event, the court need not further attempt to divine Insurer's intent in instituting this action, having already found that two of the four *Nautilus* factors weigh heavily in favor of declining jurisdiction.[3]

## IV. CONCLUSION

Applying the *Nautilus* factors to the facts in this case, the court concludes it should not exercise jurisdiction over this matter in the interest of efficiency and comity. Accordingly, Defendants' Motion to Dismiss [DE-10] is ALLOWED and this action is DISMISSED without prejudice. Defendants' alternative request to stay this action is DENIED as MOOT.

---

[3] Because the court declines to exercise jurisdiction over this action, it need not consider Defendants' argument that this action should be dismissed pursuant to Rule 12(b)(7) for failure to join a necessary party.

11

SO ORDERED.

This the 21st day of May, 2008.

James C. Fox
Senior United States District Judge